Shaw, C. J.
This action is brought by an inhabitant of the district to recover a sum of money, as had and received by the defendants to his use, and it is presented to the court upon an agreed statement of facts. The ground is, that the plaintiff has been compelled, by force of legal process, namely, an assessors’ warrant, to pay over to the collector the sum in question, as a school district tax, which was illegally assessed, and wrong fully demanded of him.
That payment on a demand made by force of such process, when the party called upon must pay or suffer his property to be taken, or his person to be arrested, and where he has no day in court to answer, is a payment by compulsion, has been repeatedly decided. Preston v. Boston, 12 Pick. 7. Dow v. First Parish in Sudbury, 5 Met. 73. It does not appear, by any fact stated in the agreement, that this money has ever been paid over by the collector -to the town treasurer, as required by law, to the use of the school district, or to any officer or agent of the. district ; and there would certainly be a technical difficulty in holding that this corporation has received any money, as the facts now stand. But this is merely technical, and may perhaps lead only to an amendment, or new trial; and as no objection on this ground was taken at the argument, we have preferred to proceed and consider the points made in the argument.
The tax in question was a tax of $ 1700, voted by the school district to be raised for the purpose of building a school house, at a meeting of the school district held on the 21st of March 1840.
1. The first objection to the regularity and validity of this meeting is, that the warrant did not embody and specify the various subjects, upon which the inhabitants of the district were *507 called to act. It is difficult to apprehend the nature and force of this exception. This warrant is before us, together with the whole of the school district records relating to this subject. These records are not only kept in a very legible and elegant hand writing, but they manifest a neatness, order and perspicuity, throughout, seldom seen in corporation records of much larger bodies. They appear to have been kept and certified by Mr. John G. Metcalf, who was clerk of the district during the entire period of these transactions.
It appears by the record, that an application was made to the committee by the requisite number of inhabitants; that there upon the committee transcribed the application, which states with precision, and in enumerated articles, all the objects for which the meeting is called. Then, upon the same paper, they annex their warrant to the clerk, directing him to call a meeting of the inhabitants, at a time and place named, to act on the articles named in the annexed application. This form makes the articles a part of the warrant, as effectually as if they had been embodied in it. It is a general rule, that when an instrument refers to a paper annexed, it becomes part of the instrument, as if it were embodied in the descriptive part of the paper itself, especially when, as in this case, the application was directed to be attested by the clerk, and the warrant to be posted up. The same rule applies to deeds and other instruments. Indeed, it is the usual form adopted in calling meetings of proprietors of common and undivided lands, as we often see in the newspapers. So the same form is commonly used when a justice of the peace calls a meeting of towns or parishes, on the application of inhabitants. There is a convenience in this, because it expresses with exactness the purposes for which the meriting is requested by those who by law have a right to request it, and the authority under which the magistrate acts, who, in this respect, is a ministerial officer.
2. Another point was taken in this connection, which is, that when the district voted, on the 21st of March, to build a school house; to contract with Dudley, and accept his proposal; to authorize the erection of a hall over the house, and a colonnade m *508 front of it, and to assess a tax of $ 1700, to meet the expenses of such building and the site for it; the proceedings were irregular and void, because the district, at their previous meeting, bad already adopted a different mode of proceeding, had agreed to accept the proposal of William T. Metcalf, and therefore had exhausted their power on the subject.
In the first place, the authority given to the first building committee was a naked authority, and might be revoked ; and doing an act quite inconsistent with it was a revocation, as much as a reconsideration of the former vote, or revocation in terms. Whether William T. Metcalf derived any right under that vote, depends upon other facts not stated, and is a very different question, not now open.
The question is, whether the vote of the district, on the 21st of March, by which the tax in question was laid, was a legal vote. The district had had several meetings, by which they had adopted a plan, agreed to employ Metcalf, and appointed a building committee, consisting of Davenport, Williams and Dudley. The last of these meetings was held on the 12th of March, and was then adjourned to the 27th day of May. On the 14th of March, two days after this adjournment, all the members of this committee, together with other legal voters of the district, exceeding fifteen, joined in an application to the committee to call another meeting, to be held on the 21st. The probability is, that the committee, when they came to execute the powers vested in them by the district, found a new proposition from Dudley, one of their own number, which they thought would be more beneficial to the district, and which they thought ought to be submitted to their constituents, before they proceeded to carry the former votes into effect. But, whatever were their motives, it is manifest, from their joining in the call, that they thought another meeting expedient, and that the interests of the district would suffer by a delay till the time of the adjournment. The question is, whether this was a legal meeting; and the court are of opinion that it was. It is not questioned that it was rightly called, as an original meeting, and would be valid, i me district had not before met and voted *509 on the same subject, and adjourned. But it seems to us that, until the former votes had been carried into effect, the whole subject was still in their power; that they might revoke the authority given to their committee, and adopt a different plan : and that this might be done at any meeting duly called, warned and held. The powers of a corporation, or other aggregate body, are not taken away or superseded by an adjournment to a future day. New facts may arise, new interests accrue, which may render it necessary to the body, that votes already passed should be rescinded or modified, or new measures adopted. It would be a great and unnecessary restriction upon the powers of such a corporation, and a detriment to its best interests, if it were rendered incapable of acting in the mean time, by an adjournment to a future day; an adjournment voted when no such exigency existed or could be foreseen. Both are legal meetings. It is .the same body reconsidering its doings under other lights, in reference to its own interests. The power of acting always exists, and if called into action, in the manner provided by law, whether it be by means of an adjournment, or by an original warrant, it is still the same body, exercising the same powers, for the same purposes, and therefore its votes and doings are of the same efficacy.
It is said that the vote of March 21st did not rescind that ot March 12th, and those which preceded it, and therefore both might have been carried into execution. If not a revocation in terms, we think it was so by necessary implication. It is a mode of accomplishing the same object, the building of a school house, by different means, and was therefore repugnant to the former, and rescinded it, by implication. Besides; the same committee were appointed to execute the latter vote, who had been appointed to execute the former, with the exception of Dudley, (for whom Allbee was substituted,) and who was himself the contracting party, under the latter. This carried a clear impli cation, that the district intended to substitute the one plan for the other, and afforded the best security to the district, that both would not go on at the same time. Perhaps, in this view, in determining whether the vote of March 21st was valid and *510 binding, it is not very material to consider whether, in point of law, the former votes were rescinded, or not. They were never in fact carried into execution; and at the adjourned meeting in May, for greater caution, they were reconsidered, and rescinded, in terms. If they had already been legally rescinded, this vote was merely immaterial; if not, it effectually annulled them.
It is objected, that this change of purpose of the district was hasty, and that the subject was not first referred to a committee. The reference of any subject to a committee, by a deliberative body, is a matter of expediency, often convenient, but not necessary to its action.
It is also objected, that the stipulation with Dudley, authorizing the erection of a second story for a hall, and a colonnade >n front — the hall to be for the occasional use of the school, and with certain rights therein to the contractors — was not' within the power of the district, and rendered its proceedings void. This also was matter of expediency. If the district considered that a hall, or the occasional use of a hall, would be beneficial to the school, we think it was within their power to provide for it, as incidental to the general power to provide a school house. Spaulding v. City of Lowell, 23 Pick. 71.
We cannot take into consideration various other objections, turning upon the questions, whether the site of the house was a good one ; whether the contract was beneficial or judicious, &c.; these were questions for the consideration of the district, to be determined according to their view of their wants of a school house and its incidents, and are entirely within their jurisdiction. In the exercise of this power, they are confined strictly to the purpose for which the law vests them with it, that of building a school house for the district. If, under color of this corporate power of a school district, the inhabitants should vote to erect an expensive and ornamental building, with a view to improve the neighborhood, to enhance the value of real estate, to accommodate societies, lecturers, dramatic exhibitions, or even to have a convenient place for religious meetings or public worship, or for any other use than that of a district town school, it would not be within the legitimate authority of a school district; and *511 any vote to levy a tax on the inhabitants, for such purpose, would be void.
3. The next objection is, that when this tax was assessed, there was not a full board of assessors, chosen and qualified to act within the town. This, we believe, in the form and under the circumstances in which it is now presented, is a new question. It appears, by the facts stated, that three assessors were duly elected by the town, at their annual meeting; that two of them were forthwith sworn, and thereby became qualified to act; but that the other one was not sworn, and, when notified of his election, made no reply; that he never in form declined to accept the office, but, when called on by the other two to act with them, he sent notice to them declining to act. But he gave no notice of this to the town, and the town did not proceed to treat his neglect to take the oath, as a vacancy, by choosing another in his stead. The law requires the town, at their annual meeting, to choose three or more assessors. Under these circumstances, the court are of opinion, that when three assessors are duly chosen by the town, there is a board of assessors. Each is an assessor. But, until qualified, by taking the oath, he is not legally competent to act. If a majority do qualify, by taking the oath, and the third has not taken the oath, still, if he has notice of their proceeding to execute the office, and declines to take the oath and act with them, their acts will be good, in the same manner as if he had taken the oath, and declined to act with them; because he is an assessor and the office is full. He may, at any time, take the oath, and thus be a qualified assessor; unless he has legally expressed his non-acceptance, or unless the town, in consequence of his neglecting or declining to take the oath of office, has filled the vacancy, by electing another in his place. Whether the town may thus proceed to treat his mere neglect to take the oath, as a non-acceptance, and thereupon fill the vacancy, it is not now necessary to decide. Probably, from the necessity of the case, especially if a majority of those chosen should thus neglect, they might do so to avoid penalties to which they might be otherwise liable. Rev. Sts. c. 15, <§.<§> 35, 36, 42. But, until the town has so done, and *512 filled the vacancy, the office is still full; there is a board, and of these, by force of the statute as well as by long usage, the majority may act.
We are therefore of opinion that the tax in question was lightly assessed by the two assessors, being a majority of the board. Williams v. School District in Lunenburg, 21 Pick. 82. Sprague v. Bailey, 19 Pick. 436.
4. Another objection is, that there were lands of non-residents in the town, not assigned to any school district; and the case of Taft v. Wood, 14 Pick. 362, is relied on to show that the tax, on that account, was void. In that case it was held, that where no assignment of such lands for taxation among the school districts had been made by the assessors, and certified to t‘he town clerk, according to law, (St. 1826, c. 143, § 11; Rev. Sts. c. 23, § 35;) a tax could not be legally assessed. That case went on the ground that the tax on the property of non-resident proprietors was a fund belonging to the town, and required by law to be appropriated to the several districts, upon some principle of equality, as well for the security of the owners, as of the several school districts; and that when the assignment and distribution were made, they were permanent, until the school districts should be altered. The objection was, not that the assessors, in that case, had not assigned some certain particular estate, but that neither they nor their predecessors had made any assignment and distribution of the non-resident real estate, and therefore failed to comply with a requisition of law, the observance of which is necessary to the equality of taxation. But the present case is not within the principle on which that is founded. Here, it is not suggested that an apportionment of the non-resident real estate had not been made and certified to the town clerk, but that certain specific real estate, belonging to some non-resident owners, had not been included in the assignment.
It is quite doubtful, upon the facts, whether the parcels of real estate specified were taxable as the property of non-resident owners. The bank house had always been taxed to residents, as owners or occupants, and the tax had been paid. So the Wilbu estate was usually occupied or improved by a resi *513 dent. But the decisive answer is, that the omission of assessors to tax particular property, through misinformation, mistake of fact, or error of judgment, does not render the whole tax void. Williams v. School District in Lunenburg, 21 Pick. 81, 82. Watson v. Inhabitants of Princeton, 4 Met. 599. Supposing therefore, upon a more full examination, that such real estate was liable to taxation, the omission of the assessors could only be considered as a mistake, or error of judgment, and would not avoid the tax.

Plaintiff nonsuit.